UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:16cr001/MCR

TRENTON S. SOMMERVILLE

_____/

## ORDER

This matter is before the court on the Government's Motion for Reconsideration or Clarification of Order Regarding Restitution, ECF No. 46. In its prior order, the court concluded that the Government was not seeking restitution for Randy Brown, Wayne English, Chris Hansen, Kip Langei, G. Lahrye Radford, and Nancy Rogers-Stegner.[1] This was based on the Government's prior oral representations, its filings, and the exhibits admitted during the course of this case. Having reviewed the parties' most recent filings, ECF Nos. 46-47, the court finds it appropriate to reconsider and clarify the matter of restitution with respect to these six individuals.

A federal district court "has no inherent authority to [require a criminal defendant to pay] restitution, and may do so only as explicitly empowered by

---

[1] The court misunderstood the Government's intent with respect to these six individuals and apologizes for any confusion this caused to the parties.

statute." *United States v. Dickerson*, 370 F.3d 1330, 1335 (11th Cir. 2004) (internal marks omitted). The Mandatory Victim Restitution Act (MVRA) provides that a district court shall order a defendant to make full restitution to victims of certain crimes, including crimes of fraud. 18 U.S.C. §§ 3663A(a)(1), 3664(f)(1)(A); *United States v. Singletary*, 649 F.3d 1212, 1220 (11th Cir. 2011). The Government has the burden of proving by a preponderance of the evidence that a particular individual was a victim of Defendant's crime within the meaning of the MVRA. *United States v. Martin*, 803 F.3d 581, 593 (11th Cir. 2015).

**A.     Randy R. Brown and Kip Langei**

Defendant argues that Randy R. Brown and Kip Langei are not victims of the wire fraud scheme for which he was convicted, and therefore not entitled to restitution, because their investments predate the time period charged in the Information. This is incorrect. The MVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). In cases involving a scheme as an element of the offense, this definition includes all losses "directly" resulting from the defendant's criminal conduct over the course of the fraudulent scheme, *id.*, and "acts of related conduct for which the defendant was not convicted," *Dickerson*, 370 F.3d at 1342 (quoting *United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999)). The Eleventh Circuit has extended this definition to related conduct committed outside the applicable

statute of limitations.  *Id*.  In *United States v. Valladares*, the Eleventh Circuit affirmed a restitution order that compensated victims of a contemporaneous, uncharged Medicare fraud scheme because its similarities to the offense of conviction – for example, the victims and the purpose of each scheme were the same, and "the two schemes involved the same modus operandi of submitting fraudulent claims to Medicare for reimbursement" – showed that both schemes "were part of a common plan or scheme."  544 F.3d 1257, 1268-70 (11th Cir. 2008).  Similarly, in *United States v. Brown*, the Eleventh Circuit approved restitution for victims of two unindicted schemes involving banking transactions that were "identical in every material respect to the [] transaction" underlying the fraudulent scheme for which the defendant was convicted.  665 F.3d 1239, 1253 (11th Cir. 2011).  The unindicted relevant conduct in *Brown* predated the scheme charged in the indictment by almost a year.  *See id*. at 1241-42, 1248.

In light of the foregoing case law, it is clear that restitution in this case should not be limited to losses resulting from acts that occurred during the specific time period charged in the Information.[2]  Instead, the restitution award may encompass losses attributable to acts related to the entire fraudulent scheme, including uncharged related conduct that predates the time period charged in the Information.

---

[2] The Information in this case charges Defendant with engaging in a wire fraud scheme "[b]etween on or about January 1, 2011, and on or about December 31, 2014."  ECF No. 1 at 1.

In particular, the court finds that all of Defendant's fraudulent activity with respect to Concordis Group, Inc., First Capital Partners, Inc., IGE, and the Caribbean gaming ventures (the "corporate entities") constitutes "related conduct" for restitution purposes.[3]  The evidence shows that in connection with these corporate entities, Defendant devised a single, unitary scheme, implemented through variations of the same materially false representations, to induce potential investors to transfer money to bank accounts over which Defendant had control.  The evidence also shows that Defendant spent much of the investment capital he received on personal expenditures, without disclosing to investors that their funds would be used in this manner.  ECF No. 7 at 2.  Defendant employed this same modus operandi for virtually all investments in the corporate entities, including many investments that predate the time period charged in the Information.  In addition to securing financing for his various business enterprises, the victims' "investments" were used by Defendant to support his lavish lifestyle. In sum, all of Defendant's fraudulent activity in connection with the corporate entities shared a common purpose, means, and modus operandi.  Based on this evidence, the court finds that all losses attributable to Defendant's fraudulent misrepresentations in connection with the

---

[3] As part of his plea agreement, Defendant admitted to fraudulently soliciting funds from investors in regards to the following entities or ventures over which he had control and signatory authority:  (1) Aleato Gaming, Inc.; (2) Concordis Group, Inc., (3) Four Kings Gaming, Inc. and Four Kings Club, Ltd., doing business as King of Clubs; (4) Playmaster, Inc. and Playmaster N.V.  ECF No. 7.  Defendant also admitted to doing business using the entities First Capital Partners, Inc. and IGE, over which he also had control and signatory authority.  *Id*.

corporate entities are interrelated and part of the same common scheme, including related conduct that predates the time period charged in the Information.

Accordingly, the court finds that the Government has shown by a preponderance of the evidence that Randy R. Brown was a "victim" for purposes of restitution in this case. The record shows that, between September 2008 and September 2009, Defendant induced Mr. Brown to wire-transfer $90,000 into a First Capital Partners, Inc. bank account by promising, primarily, a 14% return on convertible promissory notes that were ultimately never repaid in full. ECF No. 40-2 at 34-52. Mr. Brown never authorized Defendant to use any portion of his investments for personal living expenses. *Id*. at 34. Defendant used this same modus operandi and a virtually identical investment vehicle – a convertible promissory note executed by Defendant, as Chief Executive Officer of First Capital Partners, Inc. – in many of his fraudulent solicitations during the time period charged in the Information. The court finds this evidence of a common means and modus operandi sufficient to establish that Defendant's conduct with respect to Mr. Brown is related to the criminally fraudulent scheme for which Defendant was convicted. Therefore, Mr. Brown is a "victim" within the meaning of the MVRA and is entitled to

restitution for losses he sustained as a result of Defendant's fraudulent activities. The court awards restitution to Mr. Brown in the amount of $50,000.[4]

Additionally, the court finds that the Government has shown by a preponderance of the evidence that Kip Langei is also a "victim" within the meaning of the MVRA. The record shows that, between December 2008 and July 2009, Defendant induced Mr. Langei to invest $38,000 in various schemes by misrepresenting that he would "make [Mr. Langei] a millionaire within a month" through "quick high yield returns."[5]  ECF No. 30-4 at 10. At Defendant's instruction, Mr. Langei's final investment of $10,000 was wired to a First Capital Partners, Inc. bank account. Defendant also repeatedly promised, among other things, that Mr. Langei would receive stock certificates, including "double the shares" for his previous investments if only he sent more money. *Id*. at 11. Mr. Langei never received any stock certificates or returns on his investments, and he

---

[4] According to Attachment A, the Government requests restitution for Mr. Brown in the amount of $93,125.42. ECF No. 40-1 at 6. This appears to correspond with the financial loss amount that Mr. Brown reported on his victim impact statement. ECF No. 40-2 at 11. However, Mr. Brown's FBI Questionnaire and the supporting documentation show that he invested a total amount of $90,000 in Defendant's business ventures. *Id*. at 12-57. Moreover, Mr. Brown also reported that he "received two payments as partial payments" from Defendant, totaling $40,000. *Id*. at 35. As the Government knows, to ensure that a victim is compensated only for his actual losses, the court must deduct, as an offset, any value or return that the victim may have received from the defendant. *Huff*, 609 F.3d at 1249. Therefore, in calculating Mr. Brown's restitution award, the court must deduct the $40,000 partial payments from the $90,000 that he invested. The total loss, after this deduction, is $50,000.

[5] The documentation offered in support of the Government's restitution request for Mr. Langei evidences that Mr. Langei invested a total of $38,000 in Defendant's business ventures, through three separate transactions:  (1) December 2, 2008 – $10,000; (2) January 2, 2009 – $20,000; and (3) July 8, 2009 – $8,000.

never authorized Defendant to use any portion of his investment for personal living expenses. *Id*. at 54. This is the same modus operandi that Defendant employed with many of the victims who invested during the time period charged in the Information. Mr. Langei communicated with the Chief Operating Officer of Concordis Group, Inc. as recently as July 2011 and, at that time, was sent a subscription agreement for an equity interest in Concordis Group, Inc. based on his prior investments. *See* ECF No. 30-4 at 12. Based on this evidence, the court finds that Defendant's conduct with respect to Mr. Langei is closely related, both factually and temporally, to the wire fraud scheme for which Defendant was convicted. Thus, Mr. Langei is a "victim" for purposes of restitution in this case and entitled to an award of restitution in the amount of $38,000.

**B.     Nancy Rogers-Stegner**

The court finds that the Government has proved by a preponderance of the evidence that Nancy Rogers-Stegner was a victim of Defendant's wire fraud. In her victim impact statement, Ms. Rogers-Stegner stated that she invested $5,000 in exchange for 20,000 shares of stock. *See* ECF No. 30-1 at 1. Although the Government did not offer bank records documenting this investment, a stock certificate dated May 2, 2011 is provided, which reflects Ms. Rogers-Stegner's ownership of 20,000 shares of stock in Concordis Group, Inc. *See* ECF No. 30-1 at 2. According to Ms. Rogers-Stegner, Defendant fraudulently misrepresented to her

that he would repurchase these shares from her; ultimately, he failed to do so. This evidence is sufficient to support a finding that Ms. Rogers-Stegner lost $5,000 due to Defendant's criminal conduct. Therefore, the court awards restitution to Ms. Rogers-Stegner in the amount of $5,000.

**C.    Chris Hansen**

Defendant argues that Chris Hansen does not qualify as a "victim" under the MVRA because his investments occurred outside the time period charged in, and involved companies outside the scope of, the Information. The court agrees. The record with respect to Mr. Hansen's investments is significantly different from that of Messrs. Brown and Langei in that there is no evidence about the specific dates of Mr. Hansen's investments, there is no documentation confirming any details about Mr. Hansen's investments, and there is conflicting information about both the dollar amounts that Mr. Hansen actually sent to Defendant and the entities in which Mr. Hansen invested. The Government's Attachment A seeks restitution for Mr. Hansen in the amount of $7,500.[6]  ECF No. 40-1 at 5. This appears to correspond with a financial loss that Mr. Hansen reported on his victim impact statement, which

---

[6] The court uses the term "Attachment A" to reference the document entitled "Attachment A – Victim Impact and Restitution Requested," which is attached to the Second Revised Final Presentence Investigation Report, ECF No. 40-1 at 1-6. The court notes that there are two prior versions of this document, which appear to have been modified as the Government received new information from potential victims: (1) Final Presentence Investigation Report, Attachment A – Victim Impact and Restitution Requested, ECF No. 24-7 at 1-5; and (2) Second Final Presentence Investigation Report, Attachment A – Victim Impact and Restitution Requested, ECF No. 30-9 at 1-6.

reflects a $7,500 investment in IGE. ECF No. 30-7 at 2. Mr. Hansen's victim impact statement also lists various other investments, totaling $28,600. However, when Mr. Hansen was interviewed by the FBI in January 2016, he did not report any investment in IGE.[7] *See* ECF No. 30-7 at 4. Mr. Hansen told the FBI that he had invested a total of $22,000 in the following entities: Concordis Capital, Inc.; Concordis Group, Inc.; Four Kings Gaming, Inc.; The King of Clubs Casino (Trinidad); The St. Maarten Lottery; Way Cool; and Fybx. *Id*. at 4. Five of these entities are specifically referenced in the Information. Unfortunately, the Government introduced no reliable evidence confirming the details, timing, or actual amounts of Mr. Hansen's investments. Since Mr. Hansen told the FBI that his initial investment with Defendant was in 2001, ECF No. 30-7 at 4, and he appears to have invested in a number of different business ventures, there is no way for the court to ascertain the type, amount, or cause of his losses. Given the insufficiency of the evidence on these dispositive issues, the court is not authorized to award restitution to Mr. Hansen under the MVRA.

**D.   G. Lahrye Radford**

The court finds that the Government has also failed to meet its burden of proof with respect to G. Lahrye Radford's losses in the amount of $212,427.63. The

---

[7] During his FBI interview, Mr. Hansen indicated that he never authorized Defendant or any other individual to use any portion of his investment for personal living expenses. ECF No. 30-7 at 4.

Government's Attachment A states that "no restitution is due" to Mr. Radford because "it does not appear [his] monetary loss was the result of [Defendant's] scheme." ECF No. 40-1 at 4.  During the restitution hearing, the Government again stated that it was "not considering [Mr. Radford] a victim of this particular scheme." ECF No. 48 at 2.  Even in the instant motion, the Government indicates that Mr. Radford's "investment was with an entity not charged in the information." ECF No. 46 at 2.  The court has reviewed the record and agrees with the Government's original assessments that Mr. Radford does not qualify for restitution in this case.  A district court's statutory authority to award restitution under the MVRA is limited to losses "directly and proximately" caused by the defendant's criminal conduct.  *See* 18 U.S.C. 3663A(a); *see also United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010) ("A restitution award must be based on the amount of loss *actually* caused by the defendant's conduct.") (internal marks omitted).  Here, the record reflects that most of Mr. Radford's losses resulted from Defendant's alleged failure to honor the terms of an agreement by which he purchased Mr. Radford's company, Advanced Underwriting Managers, LLC, in 2010.  ECF No. 30-6 at 8-31.  Mr. Radford also suffered losses when Defendant failed to reimburse him for company expenses that Mr. Radford paid while serving as an officer for Concordis.  *Id*.  The Government has failed to show, or even argue, that these losses were directly and proximately caused by the fraudulent misrepresentations underlying Defendant's conviction for

wire fraud. Therefore, the court is not authorized to award restitution to Mr. Radford under the MVRA.

**E.     Wayne English**

The Government has also failed to prove by a preponderance of the evidence that Wayne English is a "victim" of Defendant's wire fraud for restitution purposes under the MVRA. In particular, the Government has failed to specify the amount of restitution that is due to Mr. English; instead, it requests restitution in an "Unknown" amount. ECF No. 40-1 at 3. The Government is required to prove the amount of loss sustained by each victim by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e); *United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014). Because "it is sometimes impossible to determine an exact restitution amount," the Eleventh Circuit has explained that "the restitution amount may be approximated." *United States v. Futrell*, 209 F.3d 1286, 1290 (11th Cir. 2000). However, such approximations must be based on facts *in the record*. *Baldwin*, 774 F.3d at 728. A restitution amount "cannot be woven solely from the gossamer strands of speculation and surmise." *United States v. Innarellii*, 524 F.3d 286, 294 (1st Cir. 2008) (citations omitted). A number of Courts of Appeals have reversed or remanded restitution orders where they have concluded that the Government failed to prove victims' losses adequately. *See*, *e.g*., *United States v. Archer*, 671 F.3d 149 (2d Cir. 2011); *United States v. Reifler*, 446 F.3d 65, 138-39 (2d Cir. 2006); *United States v.*

*Cornier-Ortiz*, 361 F.3d 29 (1st Cir. 2004); *United States v. Doe*, 374 F.3d 851 (9th Cir. 2004); *United States v. Felman*, 338 F.3d 212, 221 (3d Cir. 2003).

In this case, the Government has failed to quantify Mr. English's losses and failed to present any evidence that would enable the court to approximate a restitution amount.[8] None of the forty-three pages of documentation supporting this restitution request identifies a dollar amount that Mr. English actually invested, nor do the materials provide any basis from which the court could discern an amount with any reasonable certainty.[9] Without more specific evidence, any award of restitution would be an arbitrary calculation based on speculation and guess work, at best. This court is not permitted to impose a random restitution amount, unsupported by the evidence and divorced from the requirements of the MVRA. *See* 18 U.S.C. § 3664(e) ("The [Government bears the] burden of demonstrating the amount of the loss sustained by a victim [by a preponderance of the evidence]"); *United States v. Singletary,* 649 F.3d 1212, 1222 (11th Cir.2011) (explaining that

---

[8] According to the United States Probation Office, the United States Attorney's Office attempted numerous times to obtain more specific information from Mr. English; however, Mr. English was unable to remember the details of his investments.

[9] The following documents were submitted in support of the restitution request for Mr. English: a victim impact statement; an FBI questionnaire; an investigative summary of Mr. English's telephone interview with the FBI; a stock certificate dated June 29, 2010, evidencing Mr. English's ownership of 24,452 shares of stock in Concordis Group, Inc.; a stock certificate dated June 29, 2010, evidencing Mr. English's ownership of 37,283 shares of stock in Concordis Group, Inc.; a stock certificate dated November 6, 2008 evidencing Mr. English's ownership of 13,904 shares of stock in Royal Invest International Corp.; 2010 brokerage account materials evidencing the transfer of Mr. English's shares in Concordis Group, Inc. and Royal Invest into his U.S. Bancorp account. ECF No. 30-5 at 58-100.

the restitution amount "must be supported by specific factual findings"); *United States v. Futrell*, 209 F.3d 1286, 1291-92 (11th Cir. 2000) (holding that restitution may be approximated "so long as the basis for reasonable approximation is at hand"); *United States v. Fiorentino*, 149 F. Supp. 3d 1352, 1358 (S.D. Fla. 2016) (A restitution award must be based "on more than mere speculation about a victim's actual losses.").

Moreover, the Government has also failed to show whether and how Defendant's fraudulent misrepresentations caused Mr. English's losses. Mr. English told the FBI that he never spoke to Defendant and never purchased any stock directly from Defendant. ECF No. 30-5 at 65. Instead, Mr. English bought his stock from Ross Haugen, who was himself convicted of embezzling elderly victims in 2011. *Id*. On his FBI Questionnaire, Mr. English again stated that he "never talked directly to [Defendant]." *Id*. at 67. The record is void of any indication that Mr. English's investments were induced by Defendant's fraudulent misrepresentations. Restitution under the MVRA is limited to losses actually caused by the specific conduct underlying the crimes for which the defendant was convicted. *United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001). There is no evidence that Mr. English's losses were actually caused by or attributable to the specific conduct underlying Defendant's conviction for wire fraud. The MVRA does not permit this court to award restitution in the absence of a causal connection between Defendant's

criminal conduct and Mr. English's losses.  For these reasons, the court is not authorized to award restitution to Mr. English under the MVRA.

**F.    Conclusion**

The Government has failed to carry its burden of proof with respect to losses suffered by seventeen individuals, totaling at least $687,000.  While determining restitution amounts "is by nature an inexact science," *Huff*, 609 F.3d at 1248, the Mandatory Victim Restitution Act requires that any restitution award be supported by a preponderance of the evidence showing that a victim's losses were proximately caused by the Defendant's criminal conduct, 18 U.S.C. § 3664(e), and unfortunately, in this case, the fact remains that the evidence introduced as to these seventeen claimants falls woefully short of that standard.

Accordingly, it is **ORDERED** that:

1. The Government's Motion for Reconsideration or Clarification of Order Regarding Restitution, ECF No. 46, is **GRANTED**.

2. The court's Order, ECF No. 45, is hereby amended to reflect restitution to the following victims in the amounts shown:

    | | |
    |---|---:|
    | Randy Brown | $50,000 |
    | Kip Langei | $38,000 |
    | Nancy Rogers-Stegner | $5,000 |
    | **Total:** | **$93,000** |

3. The Clerk of Court is directed to enter an Amended Judgment that orders restitution in the total amount of **$2,379,240**, payable to the

victims identified above and on page 6 of the court's Order, ECF No. 45, in the amounts shown.

**SO ORDERED** this 14th day of November, 2016.

*M. Casey Rodgers*
_____
**M. CASEY RODGERS
CHIEF UNITED STATES DISTRICT JUDGE**